UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERRY LENORA McALISTER,

                Plaintiff,            Civil Action No. 16-13951
                                            Honorable John Corbett O'Meara
                                            Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 12]**

Plaintiff Sherry Lenora McAlister ("McAlister") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #11, 12), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that McAlister is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (Doc. #12) be GRANTED, McAlister's Motion for Summary Judgment (Doc. #11) be DENIED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

## II. REPORT

### A. Procedural History

As has been noted, this case has a "rather complex procedural history[.]" (Tr. 459). McAlister filed applications for DIB and SSI on March 21, 2011, alleging a disability onset date of November 1, 2010. (Tr. 141-47, 459). McAlister's DIB claim was denied because her insured status was not met on or after the alleged onset date. (Tr. 459). Her SSI application was substantively denied at the initial level on June 6, 2011. (Tr. 86-89). McAlister then filed a timely request for an administrative hearing, and appeared for that hearing without counsel on January 23, 2012; the hearing was continued to allow her an opportunity to obtain representation. (Tr. 37-43). The hearing reconvened before ALJ David Neumann on April 23, 2012. (Tr. 44-77). McAlister, who was represented by attorney Andrea Hamm, testified at the hearing, as did vocational expert Elizabeth Pasikowski. (*Id.*). At the hearing, McAlister amended her alleged disability onset date to November 11, 2011. (Tr. 62, 728). On May 17, 2012, the ALJ issued a written decision finding that McAlister was not disabled under the Act. (Tr. 23-32). After the Appeals Council declined to review the ALJ's decision (Tr. 1-5), McAlister sought judicial review. *See* Docket No. 13-12410. This Court subsequently remanded the case for further administrative proceedings. (Tr. 596-618).

On remand, McAlister's updated earnings record showed that she had acquired additional quarters of coverage for DIB purposes through December 31, 2015. (Tr. 460). The ALJ, noting that McAlister had filed subsequent DIB and SSI applications on June 6, 2013, consolidated the applications for adjudication on remand. (Tr. 459-60). ALJ Neumann conducted a new hearing on June 15, 2015, at which McAlister (again represented by counsel) and vocational expert Don Harrison both testified. (Tr. 525-59). The ALJ issued a second unfavorable decision on July 30,

2015. (Tr. 459-72). On September 12, 2016, the Appeals Council denied review. (Tr. 440-44). McAlister timely filed for judicial review of the final decision on November 7, 2016. (Doc. #1).

### B. Framework for Disability Determinations

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis

3

reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.     Background**

      *1.     McAlister's Reports and Testimony*

At the time of the second administrative hearing, McAlister was 37 years old, and at 5'8" tall, weighed 220 pounds. (Tr. 531-32). She was single and lived in a house with her four children (ages 20, 18, 15, and 13) and grandson. (Tr. 531, 538, 770). She completed the eighth grade but had no further education or training. (Tr. 532, 761). Previously, she worked as a laborer, cashier, and hair stylist; however, she alleges she stopped working on December 11, 2011, because of her medical conditions. (Tr. 167-68, 760-61).

McAlister alleges disability as a result of injuries suffered in two car accidents (in January 2009 and December 2011), which include neck and back pain, headaches, and pain and numbness in her arms and hands. (Tr. 167, 533-34, 760). She testified that she takes Percocet and Lyrica, which help her pain and cause no side effects.[1] (Tr. 537). Specifically, McAlister testified that her pain is 10/10 without medication and 0/10 with medication. (Tr. 537-38). She further indicated that her medications help (but do not eliminate) the numbness in her hands, saying she "can't hold nothing" when her hands are numb. (Tr. 546).

McAlister's children assist her with vacuuming, sweeping, mopping, and yardwork, but she is able to care for her personal needs, shop in stores, prepare meals, load the dishwasher, drive, use Facebook, pay bills, and handle checking and savings accounts. (Tr. 174-76, 538-41, 771-73). Aside from these activities, McAlister testified that she is "basically in the house laying [sic] down" watching television all day, and that she naps anywhere from two to four hours per

---

[1] Later in the hearing, when asked by her attorney whether her medication makes her tired, McAlister said, "Sometimes it does and sometimes it don't [sic]." (Tr. 544)

4

day. (Tr. 540-41, 543). She can sit for 30-60 minutes at a time; stand for one to two hours at a time; walk approximately two blocks before she has to rest; and lift a gallon of milk. (Tr. 542).

### 2. *Medical Evidence*

The Court has thoroughly reviewed McAlister's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. *Vocational Expert's Testimony*

Don Harrison testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 553-58). The ALJ asked the VE to imagine a claimant of McAlister's age, education, and work experience who can perform light work, with the following additional limitations: requires a sit/stand option while remaining at the workstation, meaning that she can sit or stand "at will" while performing her assigned duties; can perform pushing and pulling motions with her upper and lower extremities within the weight restrictions, but only occasional work above shoulder level with the left upper extremity; must avoid exposure to unprotected heights; and only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. (Tr. 554-55). The VE testified that the hypothetical individual would not be capable of performing McAlister's past relevant work. (*Id.*). However, the VE further testified that the hypothetical individual would be capable of working in the jobs of small products assembler (50,000 jobs nationally), hand packer (65,000 jobs), and laundry checker (60,000 jobs). (Tr. 555-56).

## D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that McAlister is not disabled under the Act. At Step One, the ALJ found that McAlister has not engaged in substantial gainful

activity since December 11, 2011 (the amended alleged onset date). (Tr. 462). At Step Two, the ALJ found that she has the severe impairments of obesity, cervical spondylosis, lumbar myositis, and left shoulder rotator cuff tendonitis. (*Id.*). At Step Three, the ALJ found that McAlister's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed McAlister's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations: requires a sit/stand option while remaining at the workstation, meaning that she can sit or stand "at will" while performing her assigned duties; can perform pushing and pulling motions with her upper and lower extremities within the weight restrictions, but only occasional work above shoulder level with the left upper extremity; must avoid exposure to unprotected heights; and only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. (Tr. 463).

At Step Four, the ALJ determined that McAlister is not capable of performing any of her past relevant work. (Tr. 470). At Step Five, he concluded, based in part on the VE's testimony, that McAlister is capable of performing a significant number of jobs that exist in the national economy. (Tr. 470). As a result, the ALJ concluded that McAlister is not disabled under the Act. (Tr. 471).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact

unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by

substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F. Analysis**

  *1. Substantial Evidence Supports the ALJ's Evaluation of the Medical Opinions of Record and Formulation of McAlister's RFC*

McAlister first argues that the ALJ's RFC finding is unsupported by medical opinion evidence because the ALJ (1) improperly accepted part, but not all, of the opinion of the consultative examiner, Katherine Karo, D.O., and (2) gave little weight to the opinion of her treating physician, Syed Moosavi, M.D.[2] (Doc. #11 at 21-23, 26-29). McAlister also argues that, when formulating her RFC, the ALJ erred in failing to conduct the "required" "function-by-function assessment." (*Id.* at 23-25). For the reasons set forth below, these arguments are not persuasive.

  *a. Dr. Karo's Opinion*

On November 11, 2014, McAlister underwent an internal medicine consultative examination with Dr. Karo. (Tr. 927-41). She reported bilateral lower extremity pain, which began after her 2009 and 2011 car accidents. (Tr. 927). She was treating with oral medications

---

[2] McAlister actually references "Dr. Marjanovic's opinion." (Doc. #11 at 27). But, Dr. Marjanovic did not provide any "medical opinion" – that is, a statement reflecting medical judgments as to the nature and severity of McAlister's impairments, what she could still do despite those impairments, and her physical or mental restrictions. *See* 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). The Court therefore assumes that McAlister intended to reference Dr. Moosavi's March 6, 2012 medical source statement. (Tr. 438-39).

8

only and indicated that they provided "temporary and minimal relief." (*Id.*). On examination, McAlister had normal muscle tone in all extremities, full muscle strength, normal deep tendon reflexes, normal sensation, no muscle spasm in the spine, and a negative straight leg raising test. (Tr. 928-29). Cervical and lumbar spine x-rays were negative. (Tr. 940). Dr. Karo opined that McAlister was able to ambulate without the use of an assistive device and had no physical limitations with respect to sitting, standing, or walking. (Tr. 929). Additionally, Dr. Karo completed a medical source statement, in which she opined that McAlister could occasionally lift or carry up to 100 pounds and frequently lift or carry up to 50 pounds; sit, stand, or walk for a total of six hours each or one hour at a time each; had no manipulative restrictions; could occasionally perform postural activities, such as balancing, kneeling, crouching, and crawling; should never be exposed to unprotected heights; and could occasionally be exposed to other environmental conditions. (Tr. 930-35).

The ALJ carefully considered Dr. Karo's opinion, explaining in detail why he found only certain parts of that opinion consistent with the record as a whole. (Tr. 468). Specifically, the ALJ stated:

> Little weight is attributed to the weight and environmental restrictions imposed by Dr. Karo, as they are not supported by the evidence in the record. Although her examination was negative, prior MRI testing showed very mild diffuse disc bulges at multiple levels that would cause issues in her ability to engage in medium to heavy work activity. Furthermore, the pain clinic found it appropriate to prescribe both Lyrica and Percocet on a consistent basis, which conflicts with an individual's ability to perform heavy work. Furthermore, Dr. Karo places numerous environmental limitations, including those that correspond to respiratory or cardiovascular impairments, despite no objective evidence of abnormalities in those body systems in the record. In addition, Dr. Karo indicates that the claimant requires no left upper extremity limitation, despite the clinical evidence of left shoulder tendonitis. Due to this impairment, the undersigned has limited the claimant to only occasional work above shoulder level with the left upper extremity. However, the undersigned gives great weight to Dr. Karo's limitations on sitting,

9

> standing, and walking along with her opinion on postural functioning, as these are supported by the evidence in the record. Despite the lumbar myositis and cervical spondylosis, the claimant reported no pain when on her medications and the ability to engage in significant activities of daily living …. Thus, limit[ing] the claimant to work within the parameters of the light level with a sit/stand option is proper. Furthermore, the claimant's obesity supports limiting her to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling.

(*Id.* (internal citations omitted)).

McAlister now suggests that the ALJ improperly failed to either accept or reject Dr. Karo's opinion in its entirety. (Doc. #11 at 22). As the Commissioner correctly points out, however, there is no requirement that an ALJ either adopt or reject a medical opinion wholesale. (Doc. #12 at 16 (citing *Price v. Comm'r of Soc. Sec.*, 2016 WL 3193025, at *2 (E.D. Mich. June 9, 2016) ("an ALJ is not required to adopt all of an examining source's findings, even if the ALJ gives the opinion great weight."))). Rather, what is required is that the ALJ adequately explain why he adopted or rejected the opinion's various findings. Close examination of McAlister's specific challenges to the ALJ's evaluation of Dr. Karo's opinion reveals no error in this regard.

McAlister first attacks the ALJ's decision to reject Dr. Karo's suggested environmental limitations because the doctor's own examination contained no corresponding findings of respiratory or cardiovascular abnormalities. (Doc. #11 at 22). But, this was an appropriate consideration. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (supportability of opinion is a significant factor in assigning weight to a medical opinion). McAlister points to no medical evidence to the contrary, and, indeed, the record as a whole contains no evidence of treatment for impairments that might be expected to give rise to these specific limitations. Moreover, any error by the ALJ in declining to adopt Dr. Karo's suggested environmental limitations is harmless because none of the jobs on which the ALJ relied at Step Five to find McAlister "not disabled," as they are generally performed, require exposure to the specified environmental

conditions. *See* Dictionary of Occupational Titles listings, *Assembler, Small Products*, 1991 WL 679050; *Inspector and Hand Packager*, 1991 WL 683797; *Classifier*, 1991 WL 672991 (last accessed October 24, 2017).

McAlister also argues – even more broadly – that Dr. Karo's opinion in its entirety is "inconsistent with the record as a whole[,]" asserting that the ALJ erred in giving "great weight to Dr. Karo's limitations on sitting, standing, and walking which were none." (Doc. #11 at 22). Specifically, McAlister asserts that the ALJ should have rejected Dr. Karo's opinion that she has no limitations in sitting, standing, or walking because the record contains "objective evidence documenting lesions in both her lumbar spine and in her cervical spine …." (*Id.* at 23). But McAlister's argument is flawed in multiple respects.

First, the objective evidence is minimal. For example, a lumbar spine MRI performed on March 26, 2009 was normal, and an April 22, 2009 cervical spine MRI showed only a 1-millimeter subligamentous herniation at C6-C7, with no canal stenosis, normal configuration of the spinal cord, and reversal of the cervical lordotic curve consistent with only a cervicomuscular sprain/strain. (Tr. 237-39). Similarly, a lumbar spine MRI performed in January 2012 (after McAlister's second car accident) was again normal, and the cervical spine MRI performed at the same time showed only "very mild diffuse disc bulges" at C5-C6 and C6-C7, with no evidence of focal disc herniation or spinal stenosis. (Tr. 356-57).

Second, and more importantly, McAlister ignores the fact that Dr. Karo conducted a thorough physical examination and obtained cervical and lumbar x-rays, all of which revealed no physical abnormalities or functional deficiencies, and provide ample support for Dr. Karo's opinion that McAlister did not have standing, walking, or sitting limitations. (Tr. 928-29, 936-40). In conducting the physical exam, Dr. Karo found no evidence of muscle atrophy in

11

McAlister's upper or lower extremities, that she had normal muscle tone, and that her muscle strength was 5/5. (Tr. 928-29). A sensory exam was normal. (*Id.*). McAlister was able to walk without an assistive device, sit and stand without assistance, and was able to bend, stoop, carry, push and pull. (Tr. 927-29). A straight leg raising test was negative. (Tr. 929). Dr. Karo also noted normal range of motion in McAlister's spine, hips, and extremities. (Tr. 937-39). McAlister had normal reflexes, and was able to walk on her heels and toes, as well as tandem walk. (Tr. 929, 936-37). Finally, her gait was normal, and Dr. Karo noted that McAlister was "ambulating without the assistance of an ambulatory device." (Tr. 927, 937). McAlister fails to explain why, in light of these test results, the ALJ could not have relied on the salient portions of Dr. Karo's opinion.

Finally, the ALJ considered Dr. Karo's opinion in the context of the entire record and declined to adopt her opinion that McAlister could perform medium to heavy exertional work. (Tr. 468). Specifically, the ALJ found that MRI evidence of "very mild diffuse disc bulges," as well as McAlister's prescriptions for Percocet and Lyrica, undermined this portion of Dr. Karo's opinion. (*Id.*). Instead, the ALJ limited McAlister's lifting and carrying to the light exertional level. McAlister has identified nothing that should have compelled Dr. Karo, or the ALJ, to assess different or greater limitations with respect to McAlister's ability to sit, stand, walk, lift, or carry. For all of these reasons, the Court finds no error in the ALJ's evaluation of Dr. Karo's opinion.

### b. *Dr. Moosavi's Opinion*

McAlister also challenges the ALJ's decision to give little weight to the March 2012 opinion of her treating physician, Dr. Moosavi. (Doc. #11 at 26-29). At that time, Dr. Moosavi completed a medical source statement, in which he opined that McAlister could sit for four hours

total and two hours at a time; stand for four hours total and one hour at a time; walk for three hours total and one hour at a time (or 200 feet at a time); lift up to ten pounds occasionally; push within those weight restrictions; pull up to five pounds occasionally; carry five pounds occasionally; and required a sit/stand option. (Tr. 438-39).

Courts have recognized that an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley*, 581 F.3d at 406 (internal quotations omitted). While treating source opinions are entitled to controlling weight under these circumstances, it is "error to give an opinion controlling weight simply because it is the opinion of a treating source" unless it is well-supported and consistent with the record as a whole. *Soc. Sec. Rul. 96-2p*, 1996 WL 374188, at *2 (July 2, 1996); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by objective medical evidence."). If the ALJ declines to give a treating physician's opinion controlling weight, he must document how much weight he gives it, considering a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. §404.1527(c)(2) (ALJ must "give good reasons" for weight given to treating source opinion)).

Here, the ALJ considered Dr. Moosavi's March 2012 opinion and discounted it as "not supported by the evidence in the record." (Tr. 468-69). Specifically, the ALJ stated:

> Specifically, the significant and disabling opinions conflict with the objective evidence in the record. Namely, the most recent MRI of the

> lumbar spine was negative, and the cervical spine MRI showed only very mild diffuse disc bulges. Furthermore, EMG testing was consistently negative in both the upper and lower extremities. Finally, the most recent clinical examinations were relatively benign. In addition, the undersigned notes that the issue of disability is ultimately reserved to the Commissioner.[3]

(Tr. 469 (internal citations omitted)). The ALJ's reasoning accurately reflects the medical record. (Tr. 356, 357 (lumbar and cervical spine MRIs); 843, 865-66, 870-71 (EMG testing); 928-29, 936-39, 961-62, 964-65, 967-68, 970-71 (recent clinical examinations)). Thus, the ALJ's decision to discount Dr. Moosavi's opinion as inconsistent with the evidence of record is supported by substantial evidence. *See, e.g., McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 30-31 (6th Cir. 2009) (ALJ reasonably discounted treating physician's opinion "because it is not supported by proportionate objective findings and it lacks the necessary supportability and consistency to entitle it to even deferential weight").

McAlister argues that the ALJ failed to adequately consider her own subjective reports of pain, as recorded by Milos Marjanovic, M.D. (one of her pain management physicians), when deciding what weight to afford Dr. Moosavi's opinion. (Doc. #11 at 27-28 (citing Tr. 960-62)). However, the ALJ fully and fairly evaluated McAlister's subjective complaints of pain and found them to be not fully credible. (Tr. 464-70). McAlister raises only one challenge to the ALJ's credibility finding, which, as discussed *infra* at 15-16, does not identify any error. Thus, the ALJ reasonably declined to afford greater weight to Dr. Moosavi's opinion to the extent it was based on McAlister's subjective reports of pain and other symptoms. *See Martin v. Comm'r of Soc.*

---

[3] This last sentence refers to various Disability Certificates and Work Disability Notes prepared by Dr. Moosavi and Laran Lerner, D.O. (Tr. 347, 350, 436, 816, 819, 821, 825, 828, 846, 849, 853, 859, 862, 867, 873). A medical source statement that a claimant is disabled is entitled to no special significance. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). McAlister does not challenge the ALJ's decision to discount Dr. Moosavi's Disability Certificates on this basis, and this Court has previously declined to find error in the ALJ's evaluation of these opinions. (Tr. 612).

*Sec.*, 658 F. App'x 255, 257-58 (6th Cir. 2016).

> c.   In Formulating McAlister's RFC, the ALJ Did Not Erroneously Fail to Conduct a Function-by-Function Assessment

McAlister also argues that the ALJ did not comply with Social Security Ruling ("SSR") 96-8p by failing to include in his decision a "function-by-function assessment" of the seven strength demands (sitting, standing, walking, lifting, carrying, pushing, and pulling). (Doc. #11 at 23-25 (citing *Soc. Sec. Rul. 96-8p*, 1996 WL 374184, at *1 (July 2, 1996))). The Sixth Circuit has expressly rejected this argument, however, holding that, "Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing …." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547-48 (6th Cir. 2002) (quoting *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (3d Cir. Dec. 19, 2000) (internal citations omitted)); *see also Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421 (6th Cir. 2014).

Moreover, the ALJ did in fact assess McAlister's sitting, standing, walking, lifting, and carrying capacities, as well as her ability to perform certain postural activities, in explaining why he accepted most (but not all) portions of Dr. Karo's opinion, as discussed *supra* at 8-12. Specifically, the ALJ explained that he found persuasive Dr. Karo's opinion that McAlister had no limitations in sitting, standing, and walking; however, other treatment records and MRI results led the ALJ to impose significantly greater limitations in terms of McAlister's lifting and carrying capacities than those suggested by Dr. Karo. (Tr. 468). Thus, where the ALJ expressly assessed McAlister's abilities to perform these five functions, and where McAlister has not placed her capacities for pushing and pulling at issue, the ALJ did not err in failing to expressly discuss those strength limitations. *See Winslow*, 566 F. App'x at 421 (ALJ "complied with the applicable regulations by assessing each of [the claimant's] work-related limitations that were at issue").

## 2. The ALJ Did Not Erroneously Fail to Consider the Alleged Side Effects of McAlister's Medications

McAlister next references her use of Percocet and Lyrica for her "continued pain complaints," asserting that "due to her pain as well as her medications, she takes naps every day for approximately two to four hours,"[4] and arguing that "nowhere in the ALJ's decision does the ALJ specifically address her side effects and the medication she utilized for pain relief." (Doc. #11 at 30).

SSR 96-7p,[5] cited by McAlister, specifically provides that, in assessing the credibility of an individual's allegations of disability, one of the factors to be considered is the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms …." *Soc. Sec. Rul. 96-7p*, 1996 WL 374186, at *3 (July 2, 1996). In this case, the ALJ explicitly discussed the medications that McAlister takes for pain, including Lyrica and Percocet. (Tr. 469). Moreover, in evaluating McAlister's subjective complaints, the ALJ noted that McAlister had previously denied any medication side effects to her treatment providers. (*Id.*). Specifically, the record indicates that McAlister denied medication side effects (Tr. 883) until September 9, 2012, at which point she reported medication-induced fatigue, and her Percocet dosage was decreased (Tr. 886, 888). However, after one additional dosage adjustment in November 2012 (Tr. 889, 891), McAlister again reported in January 2013 that her medications were effective without causing side effects (Tr. 893), a statement echoed throughout the treatment record through September 2014 (Tr. 896, 902, 960). Thus, the ALJ appropriately

---

[4] In reality, McAlister's testimony was far more equivocal than she now asserts. She actually testified that Lyrica did not make her sleepy at all, and that Percocet "[s]ometimes" made her tired, while other times it did not. (Tr. 544, 552).

[5] Effective March 28, 2016, SSR 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. However, the ALJ's decision in this case was made prior to the effective date of SSR 16-3p and, accordingly, the ALJ followed SSR 96-7p, the policy statement in effect at the time of his decision.

considered and discussed the alleged side effects of McAlister's medications, and her argument to the contrary is without merit.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment (Doc. #12) be GRANTED, McAlister's Motion for Summary Judgment (Doc. #11) be DENIED, and the ALJ's decision be AFFIRMED.

Dated: October 26, 2017  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

### CERTIFICATE OF SERVICE

   The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 26, 2017.

                s/Eddrey O. Butts
                EDDREY O. BUTTS
                Case Manager